Good morning, Your Honors. I'm Shannon McBinney from Cedar Law. On behalf of R.Z.C., with me today is Co-Counsel Angela Chappow, as well as R.Z.C.'s parents. Unfortunately, R.Z.C. could not join us today. He is taking a final in his trades program, and so he wasn't able to join us. Well, good luck to him on his exam. Yes. With respect to this case, there are really two issues at play, one of which I'm going to spend more time on than the other, because I think if the first resolves in one particular manner, the second, in turn, follows with that. The first was did the Administrative Law Judge err in holding that the student was not entitled to an independent educational evaluation at public expense? Key to that was the question is whether it was fatally flawed to shift the burden onto the parents to establish that the procedural violations made by the Northshore School District in conducting the evaluation rendered the evaluation inappropriate, rather than keeping the burden where it was properly borne on the district to establish that the evaluation was conducted in full compliance with the IDEA, as well as the Washington Administrative Code sections implementing that, and that the district was mandated to establish a prima facie showing that its evaluation was appropriate and was in compliance. The second issue was if the Administrative Law Judge erred in holding that Northshore denied the student with a free, appropriate public education. In this instance, the fabe denial stems from the fact that the student was exited from special education services when he was a freshman in high school as a result of the district's evaluation, excusing the student, and instead he was placed on a 504 plan that actually excused him from meeting the requirements in the areas where he had deficits. So while the district points to the fact that he continued to make progress and go through the grades, they failed to acknowledge the fact that he was excused and did not have to meet standards in the areas where he demonstrated deficit. So you can't claim that a child is getting FAPE if they're excused from completing the skills that they have deficits in, and instead of providing them instruction to ameliorate that. Essentially, exiting the student was an inherent FAPE denial because he was only getting lower standards moving forward. So looking at his ability to maintain grade level alone is not sufficient to establish that he received FAPE. Additionally, as set forth, the parents were providing a tremendous amount of support outside of school, and as the court is well aware, there are many cases that identify that when you take into the consideration whether or not a student is entitled to a free appropriate public education, you can't just look at grades when there's a significant amount of effort going on outside of the school setting. With respect to the first issue and the erroneous burden shifting related to the independent educational evaluation, in this instance, the parents were put in the awkward position of having to establish a denial of free appropriate public education to establish that they were entitled to an IEE at public expense. That's simply not the manner in which... They did get an IEE, right, with Dr. Blair? They had paid for an evaluation at their own expense. Okay, and so you're arguing over who has to... And they received an IEE. I'm sorry, let me finish that. Dr. Blair conducted her work, then the district conducted another evaluation, and they requested an IEE with respect to the district's evaluation because with each evaluation you have a right to ask for an IEE. So they asked for a second IEE after the district... Correct, correct. Did they identify who they wanted to do that? They did not. When they requested the second IEE, that's where the district pursued is. And the argument for a second IEE is we're simply entitled to one? Entitled to one and also understand how is it that the district could say it was relying on Dr. Blair's work to reach the conclusion that the student was not entitled to remain in special education while also 19 days earlier changing the student's IEP to state that he needed... Okay, all right, okay. Now, this is an interesting... because you've couched this as an argument over who had to pay for a second IEE instead of saying the district's decision was simply contrary to the evidence. But you've got findings by the ALJ, confirmed by the district court, that the district's evaluation was not contrary. Their conclusions were not contrary to the evidence. It was supported by substantial evidence, taking into account everything that Dr. Blair said and attested. I don't think that the administrative law judge did a thorough and fair assessment. Frankly, his exact quote was that the district's evaluation could have been better, and ultimately there was... But that's true of almost everything that we do. It's true of almost everything we do, but it's important to compare what the district actually did with respect to its evaluation. Its evaluation was very minimalistic. It had an assistive technology referral done. It stated that it was relying on Dr. Blair's work when, in fact, Dr. Blair's work had already been reviewed at a February IEP meeting and caused the student's IEP to be changed to more specifically delineate his need for specially designed instruction. But you're basing your argument here on the question of who has to pay for the second IEE rather than arguing straight up that the district's conclusion was contrary to the evidence, not supported by substantial evidence. I'm arguing that the court and the administrative law judge erred in shifting the burden to the parents to establish... Which paragraph of the ALJ's opinion do you think is in error? I think the overall tone of the administrative law judge... The tone is going to be a pretty broad argument, very difficult to make. I think it's cited specifically in the brief, but when it gets to the point where the court is analogizing... Is there a particular paragraph that deals with this question of the second IEE? It does, and that has to do with the one paragraph that is included in the evaluation report. Okay, so which paragraph are we talking about? Sure. We are talking about... Scroll to it. The paragraph in ER 119 that says the student does not need any academic area at this time, which is three sentences. Okay. Can you tell me which paragraph number it is? Because I think I've got a different ER site for this. Oh. Well, then, no, I can't at this time, but I will when I'm back up here on rebuttal if that assists. Okay. Read me the paragraph. Okay. So the district's evaluation at ER 119 identifies that the student does not need any SDI in any academic area at this time. However, there's no explanation for how that was determined, despite the fact that less than a month earlier, on April 1, 2015, which is ER 101 and 102 and ER 94, the district amended the IEP to state that the student's learning disability impacts his involvement and progress in the general education curriculum, and he requires specially designed instruction in the area of written expression. He currently demonstrates challenges with basic writing skills, including spelling, grammar, word uses, convention, and punctuation. So the North Shore School District believed that on April 1, and 20 days later they're reaching a different conclusion, but they never tell the parents how it is they got to that conclusion. What in the law tells us that the second IEE should have been paid for by the school district? The Washington Administrative Code sections related to what a client. Okay. Which code number? I've got the code here, so I'd like to turn to the specific provision. I am sorry, I do not have the specific code section with me in front of me. It is attached to our briefing and referenced therein. Okay. Can you quote the language? Can you tell me what it says? It's specific to the requirements associated with having a complete assessment and the requirements that identify what an appropriate assessment is.  Yes. Okay. Do parents have to see the IEE question repeatedly and have the school district pay for it? Yes. They can ask for as many as they want? Because it's sort of in the nature of an appeal. You are entitled to one IEE per district evaluation. So every time the district conducts an evaluation, the parents have a right to request an IEE at public expense. In this instance, when the district completed its evaluation in May, it triggered the parents' right to seek an IEE, which they subsequently did. So every time a school district finishes an evaluation, it triggers a parent's ability to seek an IEE. And what was important here is the parents were never provided notice or an explanation from the North Shore School District as to why it reached the decision it did 20 days after using the same information to change the student's IEP. I don't know why it took the district several months to amend the student's IEP, but on April 1st, they incorporated Dr. Blair's work into the student's IEP. If they disagreed with the manner in which Dr. Blair got to the conclusions that she did, the appropriate step for the district would have been to propose conducting its own cognitive and academic assessments as part of its evaluation. But because, even though they sent out five different communications to the parents, they never said, we're rejecting Dr. Blair's work with respect to the specific learning disability determination. And that would have triggered the opportunity for the parents. This is the one that the SLD was required for basic writing? With respect to written expression, yes. Yeah. Now, Dr. Blair actually, I think, used the word writing. She used basic written skills, and then that was incorporated by the district into the student's IEP because that was a manifestation of how his specific learning disability in written expression was showing itself in his academic performance. So that was demonstrating the adverse impact. Essentially, what the district did was give the parents a summons without a complaint. We're not giving you, we're not keeping the student eligible for special education, but we're not going to tell you why. And I see I've reached my time. Well, you've reached the end of your time, but we'll make sure to give you a chance to respond. Thank you. You'll get to see what you need to say. Thank you. Thank you. Good morning. May it please the Court, Carlos Chavez on behalf of North Shore School District. I'd like to perhaps walk us back through the record a little more concisely. In May of 2015, a team of qualified and experienced school professionals led by school psychologist Jackie Terveen met with the parents, reviewed a variety of data sources, including an IE report paid for by the district, completed by Dr. Blair, but more importantly, also information from the students' actual teachers, observation done by the school psychologist, the student's academic history, including his success in general education classes. At the conclusion of that evaluation meeting, the team determined that the student's progress within the written expression area had reached the point where he no longer required specially designed instruction. So the team determined to exit the student from special education services. They documented that decision in a comprehensive evaluation report that's shown in the record. Now, the parents have every right to disagree with that decision, and they did. But they did not disagree below with the process. They disagreed with the outcome. In a four-day hearing, a senior administrative law judge rejected all of their arguments, found that they had not proven that that evaluation violated the IDEA. Simultaneously, the administrative law judge also concluded the district's evaluation was appropriate. And under the WAC standard in the state, if an evaluation is appropriate, the district is not required to pay for an IE. And, Your Honor, you're correct. There had been two IEs at issue. The first one paid for by the district, Dr. Blair, in January of 2015. The parents sought their hearing in October of 2015. And then in January of 2016, on the eve of the administrative hearing, they then sought this second IEE. So are they entitled to an IEE because there's been an evaluation following the first IEE? In other words, the sequencing is Dr. Blair conducts an IEE, then there's an evaluation. Are they entitled to a second, to another IEE on top of that? Your Honor, the threshold requirement would be that since a second evaluation was completed, the May 2015 district evaluation, they then have the right to request that second IEE. But they're not entitled to it absent a finding by an administrative law judge that the evaluation is inappropriate. Now, the parents ---- What section of the code are we dealing with? WAC 392-172A-5005. You'll find that in parents' appendix. Okay. Page 90 of 95, Your Honor, of their brief, at least the ECR, ECF. Yeah. Can you give me the sub? The subparagraphs, Your Honor? Yeah. So it's 05005. I'm sorry, of the actual regulation itself? Yeah. Okay. So then that would be 2A and B. 2A and B. Okay. So you'll note 2A reflects parents' right to an IEE if they disagree with the district evaluation. Right. And then 2B is reflecting that they can only seek one per district evaluation. With regard to the notion that the ALJ inappropriately shifted the burden to the parents, the district fundamentally disagrees with that. It was clear that the ALJ understood that the burden for showing appropriateness of the district's May 2015 evaluation was on the district, and he found that they had done so. His ruling is entirely consistent with this Court's ruling, Ford v. Long Beach, where if there are procedural errors, that alone does not render a district evaluation inappropriate for purposes of an independent educational evaluation. Rather, this Court held that you need to look at the overall adequacy of the evaluation. And the ALJ properly found that the district's evaluation was appropriate or adequate. Now, what's important to note, and I'll just note it's important, the parents were simultaneously challenging the appropriateness of the evaluation on the exit decision. The very decision and its outcome was being challenged by the parents, and they properly bore the burden of proof on showing to the ALJ that the district's evaluation was not appropriate, that the students still continued to have a right to special education services. And on that, Your Honors, the record is clear. The team appropriately considered multiple sources of data. This argument that the district did not consider Dr. Blair's report is just not supported by the record. It's clear the report lays out Dr. Blair's test results. The evidence is clear from each of the witnesses, other than parents, who the ALJ noted did not really describe the conduct of that evaluation meeting, but that Dr. Blair's results were discussed, but also the entire scope of the student's educational experience. This was a student at this point in time of May 2015. He was only receiving 10 minutes per day of consultation from a special education teacher. So not even direct services from a special education teacher, yet was doing phenomenally well in his classes. So the team decided the student no longer required specially designed instruction. This, in fact, is a success, Your Honor. The fact that the student only required accommodations was not inappropriate. It was, in fact, fully compliant with the intent of the Act, which is to provide students specialized support and then move them off once they no longer need it. Yes, Your Honor. Oh, pardon me. As to the various procedural attacks on the district's evaluation, I believe the district's briefing cites fully to the record, showing that each of those arguments are not supported by the record. For example, this notion that the district did not provide prior written notices of its decisions. The attack raised is that the district did not issue a prior written notice saying they were rejecting Dr. Blair's two particular assessments results. Well, that's because the record shows they didn't reject it. They considered her Woodcock-Johnson scores in written expression and basic writing. They considered her Tau 3 subtest score. But in the entire context of how the student was doing, those data points did not outweigh the decision that the student was doing well enough that he no longer required specially designed instruction. Counsel, I do have a question about the standard of review. It appears that both the ALJ and the district court used prejudice as a standard. That is, if there were some inadequacies or there were some things around the edges that you would still have to demonstrate that there was some kind of prejudice, sort of a harmless, sort of the inverse of the harmless error standard. I don't see that that comes out of Washington law. It looks like it's been borrowed from the IDEA. So, Your Honor, it in fact does come from the IDEA, but it is incorporated specifically into Washington code. And, Your Honor, that is at 392.172A.05.105, which is also cited in the parent's appendix. But that specifically incorporates that an ALJ may not find a denial of FAPE based on procedural inadequacies, absent violations that impeded a student's right to FAPE, significantly impeded the parent's right to participate in the decision-making process, or otherwise caused the deprivation of educational benefit. So, in fact, the ALJ correctly applied that standard in looking at these procedural, alleged procedural defects with the district's evaluation and concluded there was no such showing. I didn't hear any place that said it used a prejudice standard, which is, I believe, explicitly what the district court said. And, Your Honor, I'm less clear if the district court specifically articulated It sounds like the code provision that you've decided requires some showing of some kind of concrete harm. Yes, Your Honor. But I believe that that prejudice standard comes from the IDEA cases, the Federal cases. Correct, Your Honor. I'm not sure that the Washington courts have actually addressed that question as to whether they adopt the same standard that's adopted in the IDEA. Your Honor, I would disagree. That standard I decided from the WAC is actually from the same language from the Act itself. That provision of harmless error actually originated out of this circuit, I believe in the early 1990s, as to a harmless error that, for example, in MS versus Vashton Island School District, technical deficiencies in an IEP will not render it inappropriate. That standard from this court was then codified by Congress into this harmless error standard, as it's at least known in the school business, Your Honor. But, so I see I'm almost at time. If there are any remaining questions, if not, I would ask that this court reject this appeal and uphold the administrative decision in its entirety. Okay, thank you. Thank you. Ms. Marsh, would you put two minutes on the clock, please? I thank Mr. Chavez for giving the citation, so now I will not repeat that. But I do want to focus on the Ford case that the district is relying on to really explain the difference between what happened in that case and what happened in this case. In that case, the district conducted six different assessments of the student after having an assessment planning meeting where it told the parents what it was doing and why. That never happened in this instance. At no point did the parents get notice from the school district that said, we're apparently accepting Dr. Blair's work and her data, but we're rejecting her conclusion and this is why. And so the parents were never in a position at any of these meetings or through any of the documentation provided by the district to say, if you agree with the data, you've considered it, but you reject the conclusion, then please go ahead and conduct additional cognitive and academic assessments of your own so that you can tell us why you're reaching this conclusion. Ultimately, it is critical in these cases to focus on the parents' meaningful opportunity to participate, which has been highlighted by this court several times. And while technical deficiencies in an IEP may be forgiven, we're not talking about an IEP. We're talking about a special education eligibility evaluation, which has to be on its face appropriate, and here it was not. Unlike in Ford where six different assessments were done, there was nothing done but an assistive technology referral and a school psychologist sitting in a classroom for 40 minutes, never watching the student do a single thing that there was something of concern in. In fact, when there was an opportunity for the student to demonstrate what he knew about paragraphs, another student answered the question that was aimed at him and then he simply repeated the answer. That's not an appropriate evaluation.  That's nothing like what happened in Ford. And with respect to the student doing phenomenal, I would love to see the evidence that demonstrates that. Your Honors have examples of his handwriting in the parents' opening brief. I did pick up that word in it. Phenomenal, I think, was probably not an appropriate description of what's going on here. I see that my time is up. Thank you. Thank both sides for your very helpful arguments. RZC versus North Shore School District now submitted for decision. The next and final case this morning, IPC-USA versus Ellis.
judges: W. Fletcher, Bybee, Burns